UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MICHAEL P. HENDERSON,                            CIV. NO. 13-1493 (DWF/JSM)

      Petitioner,                              REPORT AND RECOMMENDATION

v.

LORI SWANSON,

      Respondent.


JANIE S. MAYERON, United States Magistrate Judge

This matter is before the undersigned United States Magistrate Judge on Petitioner Michael P. Henderson's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Docket No. 1].  The matter has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

## I.     FACTUAL BACKGROUND

On June 20, 2011, Petitioner Michael P. Henderson ("Petitioner") was charged in Anoka County, Minnesota with first-degree possession of methamphetamine precursors with intent to manufacture.  Resp. Ex. 9 (Respondent's Brief, State v. Henderson, No. A12-0623 (Minn. Ct. App. March 11, 2013)), p. 4 [Docket No. 15].  Petitioner made his initial appearance before the Anoka County District Court on June 21, 2011. Resp. Ex. 5 (Order of Minnesota Court of Appeals dated October 25, 2011), p. 1 [Docket No. 16].   The district court set bail at $200,000 without non-monetary conditions, or $100,000 with monetary conditions.  Id.  Petitioner appealed the district

court's bail determination to the Minnesota Court of Appeals, arguing that the amounts were excessive. Id., pp. 1-2.

In September, 2011, while Petitioner's appeal was pending,

> [t]he district court granted him furlough [from the Anoka County Jail] to attend a residential drug-treatment program at a Salvation Army facility in Minneapolis. [Petitioner] left the program without completing it but did not return to the Anoka County jail as ordered. Police arrested [Petitioner] a few days later in Anoka County, and the state charged him with escape from custody in violation of Minnesota Statutes sections 609.485, subdivision 2(1), 609.485, subdivision 4(a)(1), and 609.101 (2010).

State v. Henderson, 2013 WL 869672, at *1 (Minn. Ct. App., 2013) (unpublished opinion).

On October 4, 2011, the district court reduced Petitioner's bail to $70,000[1] without non-monetary conditions.[2] Resp. Ex. 5, p. 2. Three weeks later, the Minnesota Court of Appeals denied Petitioner's appeal of the district court's bail determination on the grounds that, because Petitioner was no longer subject to the $200,000 and $100,000 bail amounts, Petitioner's appeal was moot. Id.

On October 31, 2011, Petitioner filed a Petition for Review in the Minnesota Supreme Court. Resp. Ex. 6 (Petition for Review dated October 31, 2011)

---

[1]    There is a discrepancy in the record as to the reduced bail amount. According to the Anoka County prosecutor's copy of the court minutes, Petitioner's bail was reduced to $75,000. Resp. Ex. 3 (Prosecutor's Copy of Court Minutes in Anoka County District Court File No. 02-CR-11-4347) [Docket No. 10]. The Minnesota Court of Appeals, however, states that the amount was $70,000. Resp. Ex. 5, p. 2. This minor inconsistency does not affect the Court's analysis.

[2]    The district court did not offer a bail option with non-monetary conditions. Resp. Ex. 5, p. 2.

[Docket No. 12].   The Petition was denied.   Resp. Ex. 7 (Order Denying Petition for Review dated December 21, 2011,) [Docket No. 13].

Meanwhile, on November 17, 2011, Petitioner was brought before the Anoka County District Court on his escape-from-custody charge.

> [Petitioner] entered an Alford plea, maintaining his innocence while acknowledging that the state would probably convict him at trial.  See North Carolina v. Alford, 400 U.S. 25, 37, 91 S.Ct. 160, 167 (1970); State v. Goulette, 258 N.W.2d 758, 761 (Minn. 1977) (adopting Alford pleas in Minnesota). He told the district court that he was entering the Alford plea to receive the benefits of a plea agreement, and he acknowledged that his plea might make appeal difficult. Under the agreement, [Petitioner] was required to complete a treatment program while on a jail furlough that would begin immediately after sentencing.   The district court warned [Petitioner] that violating the terms of his stay would result in an executed prison sentence of 15 months under the Minnesota Sentencing Guidelines, and [Petitioner] indicated that he understood.   The state dismissed the drug charges as part of the agreement.   [Petitioner] signed a plea petition memorializing the terms of the plea.
>
> [Petitioner] moved the district court to withdraw his Alford plea.   At his sentencing hearing, he argued that he had been subjected to a manifest injustice because he was not in custody while on furlough and therefore could not have escaped from custody.   He also argued that the plea agreement was unfair because it imposed a guidelines sentence plus 180 days and he complained, "I'm not getting this great deal."   The district court parried, highlighting that the plea agreement also included dismissal of drug charges carrying a maximum 144-month sentence, making his 15-month stayed sentence "a good deal."   He also asserted that the statute was unconstitutionally vague and that the district court lacked jurisdiction.   The district court denied the motion after it found no showing of manifest injustice in the plea agreement and held that it would not be fair and just to allow [Petitioner] to withdraw his plea.

Henderson, 2013 WL 869672, at *1-2.

Petitioner appealed his escape-from-custody conviction to the Minnesota Court of Appeals.  Germane to this habeas petition, Petitioner asserted that the district court applied the wrong legal standard in denying his motion to withdraw his <u>Alford</u> plea before sentencing.  Resp. Ex. 8 (Appellant's Brief), pp. 2-3 [Docket No. 14].  According to Petitioner, pursuant to Minn. R. Crim. P. 15.05, a district court should allow a defendant to withdraw a plea "to correct a manifest injustice" or "if it is fair and just to do so."  <u>Id.</u>  However, Petitioner maintained that the district court analyzed his motion only under the "manifest injustice" standard.  <u>Id.</u>, p. 3.  The Court of Appeals dismissed Petitioner's claim that the district court erred when it analyzed his request to withdraw his <u>Alford</u> plea using only one of two available standards.  <u>Henderson</u>, 2013 WL 869672, at *2.  According to the court, the record showed that the district court had analyzed Petitioner's motion under both standards.  <u>Id.</u>

Following the denial of his appeal, Petitioner filed a <u>pro se</u> petition to the Minnesota Supreme Court for further review of the Court of Appeals' decision.  Resp. Ex. 11 (Petition for Review dated April 8, 2013) [Docket No. 18].  In this Petition, Petitioner submitted that he should have been permitted to withdraw his "no contest plea" because it was "fair and just to do so" pursuant to Rule 15.05, subd. 2 of the Minnesota Rules of Criminal Procedure.  <u>Id.</u>  The Minnesota Supreme Court denied the petition on May 29, 2013.  Resp. Ex. 12 (Order Denying Review dated May 29, 2013) [Docket No. 19].

On June 19, 2013, Petitioner filed the present habeas petition, in which he raised two grounds for relief.  Petitioner asserted that he was denied his Sixth Amendment right to trial when the state court denied his motion to withdraw his <u>Alford</u> plea on the

4

escape-from-custody charge.  Petition, p. 5.  Petitioner also contended that he was held on excessive bail of $200,000.  Id., p. 7.

Respondent Lori Swanson ("Respondent") opposed the Petition.  Respondent argued that Petitioner's Sixth Amendment plea-withdrawal claim should be dismissed because Petitioner did not raise federal constitutional grounds for this claim in state court, and therefore he did not exhaust his available state-court remedies.  Respondent's Answer to Petition for Writ of Habeas Corpus ("Resp. Answer"), pp. 5-7 [Docket No. 6].  With respect to Petitioner's excessive-bail claim, Respondent contended that the claim was moot because Petitioner was no longer entitled to bail.  Id., p. 8.  Respondent also asserted that Petitioner's bail was not excessive given the nature of Petitioner's charges and prior criminal history.  Id., pp. 8-9.

In reply, Petitioner contended that exhaustion of state remedies is a matter of comity, not jurisdiction, and consequently, the Court could hear his claims in its discretion.  Petitioner's Reply to Respondent's Answer ("Pet.'s Reply"), p. 4 [Docket No. 25].  Petitioner also maintained that he fairly presented the federal constitutional basis of his plea-withdrawal claim to the state court, citing his Petition for Review in the Minnesota Supreme Court.  Id., p. 5.  As to the merits of his plea-withdrawal claim, Petitioner stated that his plea deal, upon further examination, "was no deal," and it was unfair and a "manifest injustice" to deny his motion to withdraw his plea.  Id., pp. 6-7.  Finally, Petitioner alleged that the trial court set an excessive bail amount to improperly obtain a guilty plea, as evidenced by the fact that he was released on recognizance after entering his Alford plea.  Id., p. 3.

Petitioner seeks to vacate his conviction for escape from custody, or to commute his sentence to "time served in full."  Petition, p. 15.

## II.     ANALYSIS

### A.     Petitioner's Sixth Amendment Right to Trial

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs a federal court's review of habeas corpus petitions filed by state prisoners.  Section 2254 of the AEDPA provides that a district court will entertain a petition for writ of habeas corpus submitted by a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); see also Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

It is well established that a federal court cannot entertain a petition for a writ of habeas corpus on behalf of a state prisoner unless the prisoner has first exhausted all available state court remedies as to each of his claims.  28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State"); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509 (1982). This requirement is based on principles of comity and federalism; its purpose is to ensure that state courts are given the first opportunity to correct alleged federal constitutional errors raised by state prisoners.   O'Sullivan, 526 U.S. at 842; Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam); Lundy, 455 U.S. at 518-19;

Smittie v. Lockhart, 843 F.2d 295, 298 (8th Cir. 1988).   Accordingly, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845.

"To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citations omitted); see also Turnage v. Fabian, 606 F.3d 933, 936 (8th Cir. 2010) ("The onus rests on the prisoner to present the substance of his federal claims 'in each appropriate state court (including a state supreme court with powers of discretionary review.'") (quoting Baldwin, 541 U.S. at 29).   In order to fairly present a federal claim to the state courts, "[i]t is not enough that all the facts necessary to support a federal claim are before the state court or that the petitioner asserted a similar state-law claim."   Ashker v. Leapley, 5 F.3d 1178, 1179 (8th Cir. 1993) (quoting Tyler v. Wyrick, 730 F.2d 1209, 1210 (8th Cir.) (per curiam), cert. denied, 469 U.S. 838 (1984)).   Rather, "the petitioner must have referred to 'a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue' in a claim before the state courts."   Murphy v. King, 652 F.3d 845, 849 (8th Cir. 2011) (quoting McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997)).   In short, while a state prisoner seeking federal habeas relief is not required to have spelled out every nuance of his federal constitutional claims to the state courts, nevertheless, if a claim is based on the federal constitution, the prisoner must "fairly present the facts

and substance of his habeas claim to the state court." <u>Middleton v. Roper</u>, 455 F.3d 838, 855 (8th Cir. 2006) (citations omitted); <u>see also</u> <u>Adams v. Robertson</u>, 520 U.S. 83, 89 n. 3 (1997) ("[P]assing invocations of 'due process' . . . [that] fail to cite the Federal Constitution or any cases relying on the Fourteenth Amendment . . . [do] not meet our minimal requirement that it must be clear that a <u>federal</u> claim was presented") (emphasis in original) (citations omitted)); <u>McCall</u>, 114 F.3d at 757 ("Mere similarity between the state law claims and the federal habeas claims is insufficient: 'If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution.'") (quoting <u>Henry</u>, 513 U.S. at 365-66)).

When a prisoner has not exhausted his state court remedies for a particular claim, and state procedural rules preclude any further consideration of that claim, then the claim has been procedurally defaulted. <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991); <u>see also</u> <u>O'Sullivan</u>, 526 U.S. at 848 (holding that petitioner's failure to timely present federal claims to the state high court resulted in a procedural default); <u>Turnage</u>, 606 F.3d at 936 ("If a prisoner fails to present his federal claims to the state courts, those claims are generally considered procedurally defaulted.") (quoting <u>Barrett v. Acevedo</u>, 169 F.3d 1155, 1161 (8th Cir. 1999) (<u>en</u> <u>banc</u>)).  A claim that has been procedurally defaulted will not be entertained unless the petitioner has shown "cause and prejudice" to excuse his procedural default, or, in the alternative, that a "fundamental miscarriage of justice" would result if the federal court declined to consider the claim. <u>Coleman</u>, 501 U.S. at 750.

"'Cause' . . . must be something <u>external</u> to the petitioner, something that cannot fairly be attributed to him. . . . For example, 'a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or that 'some interference by officials' . . . made compliance impracticable . . . .'" <u>Coleman</u>, 501 U.S. at 753 (emphasis in original) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488). "Prejudice" that will overcome a procedural default requires a showing by a petitioner "not merely that the errors at his trial created a <u>possibility</u> of prejudice, but that they worked to his <u>actual</u> and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>Armstrong v. Kemna</u>, 590 F.3d 592, 606 (8th Cir. 2010), <u>cert. denied</u>, 560 U.S. 945 (2010) (quoting <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982) (emphasis in original)).   A court need not determine the "cause" issue if it first determines that the petitioner has not made a showing of prejudice.  <u>Id.</u> at 606 n. 12.

The "fundamental miscarriage of justice" exception is available only upon a "showing, based on new evidence, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" <u>Brownlow v. Groose</u>, 66 F.3d 997, 999 (8th Cir. 1995) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)), <u>cert. denied</u>, 516 U.S. 1161 (1996)).  In other words, a petitioner cannot simply point to errors that allegedly occurred during the course of his state criminal proceeding; he must instead offer some new evidence which affirmatively demonstrates that he is, in fact, innocent of the crime for which he was convicted.[1]

---

[1]     The actual innocence exception is concerned with claims of actual, not legal innocence.   It is evidence of factual innocence coupled with a constitutional violation which triggers the actual innocence exception.   Indeed, a credible claim of actual innocence requires [a] petitioner to support

If a petitioner is unable to show cause and prejudice, or a miscarriage of justice, the procedural default cannot be excused, and the court will deny the claim without addressing its merits.   See Carney v. Fabian, 441 F. Supp. 2d 1014, 1029 (D. Minn. 2006).

Petitioner argued that he fully exhausted his available state remedies by presenting the constitutional grounds for his plea-withdrawal claim in his appellate brief to the Court of Appeals and Petition for Review in the Minnesota Supreme Court. Pet.'s Reply, p. 5 (citing Resp. Ex. 8 (Appellant's Brief), p. 3; Resp. Ex. 11 (Petition to Supreme Court), p. 3).  This Court finds otherwise.

In order to fully exhaust available state remedies, a prisoner must fairly present the constitutional basis for his claim "in each appropriate state court."   Baldwin, 541 U.S. at 29 (emphasis added).  This did not happen.  In his appellate brief to the Minnesota Court of Appeals, while it is true Petitioner referenced the "U.S. Const. amend. VI," this mention of the Sixth Amendment was not in connection with his plea-withdrawal claim; it was made in connection with a different ground for appeal.  Resp. Ex. 8 (Appellant's Brief), p. 3 ("The Tenth District Court lacked jurisdiction to hear this matter under improper venue.").   No citation to the federal constitution was made

_____

his allegation of constitutional error with new reliable evidence . . . .  Examples of evidence which may establish factual innocence include credible declarations of guilt by another, trustworthy eyewitness accounts, and exculpatory scientific evidence.

Pitts v. Norris, 85 F.3d 348, 350-51 (8th Cir. 1996) (internal citations and marks omitted), cert. denied, 519 U.S. 972 (1996).  For purposes of showing actual innocence, "'evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence.'"  Johnson v. Norris, 170 F.3d 816, 817 (8th Cir. 1999) (quoting Armine v. Bowersox, 128 F.3d 1222, 1230 (8th Cir. 1997) (en banc), cert. denied, 523 U.S. 1123 (1998)).

regarding his plea-withdrawal claim.  Id.  Likewise, in his Petition for Review to the Minnesota Supreme Court, no mention was made of a claim based on any part of the federal constitution.  Instead, Petitioner merely stated was that "it would be fair and just to allow [Petitioner] to proceed with his Constitutional Right to a Public Trial." Resp. Ex. 11 (Petition to Supreme Court), p. 3.  A passing invocation to a "right to a public trial" that does not cite the federal constitution or to any cases relying on any part of the federal constitution does "not meet our minimal requirement that it must be clear that a federal claim was presented."  Adams, 520 U.S. at 89 n. 3.

In summary, Petitioner did not fairly present the federal basis of his plea-withdrawal claim in state court.  On direct appeal of his conviction to the Minnesota Court of Appeals, Petitioner's brief cited no federal case law, nor did it reference any federal constitutional provisions.  As a result, the Minnesota Court of Appeals was not alerted to the federal nature of Petitioner's claim, and it therefore dismissed Petitioner's challenge solely on state-law grounds.  Similarly, upon Petition to the Minnesota Supreme Court, Petitioner cited only to the Minnesota Rules of Criminal Procedure. Resp. Ex. 11 (Petition for Review dated April 8, 2013).

Because Petitioner did not raise his Sixth Amendment claim to the Minnesota Court of Appeals or Minnesota Supreme Court, he failed to invoke a complete round of Minnesota's appellate review process.  Accordingly, Petitioner did not exhaust his state-court remedies before filing the present Petition.

Petitioner's claim has also been procedurally defaulted.  Petitioner has already sought direct review of his conviction in both the Minnesota Court of Appeals and the Minnesota Supreme Court.  Therefore, it is now too late for him to present his

constitutional challenge on direct review.  In addition, Petitioner has forfeited his right to state post-conviction review.  Under Minnesota law, "[a] petition for postconviction relief after a direct appeal has been completed may not be based on grounds that could have been raised on direct appeal of the conviction or sentence."  Minn. Stat. § 590.01 subd. 1.  Additionally, "'when a petition for postconviction relief follows a direct appeal of a conviction, all claims raised in the direct appeal and all claims of which the defendant knew or should have known at the time of the direct appeal are procedurally barred.'" Hooper v. State, 838 N.W.2d 775, 787 (Minn. 2013) (quoting Buckingham v. State, 799 N.W.2d 229, 231 (Minn. 2011)); see also Maxwell v. Gau, Civ. No. 12-1770 (ADM/TNL), 2014 WL 1371912, at *10 (D. Minn. Apr. 8, 2014) ("The State of Minnesota has a well-established procedural rule that prevents state prisoners from seeking post-conviction relief based on claims that could have been raised in direct appeal.") (citing State v. Knaffla, 243 N.W.2d 737 (Minn. 1976)).  This rule, called the Knaffla Rule, is well-settled state law.  Powers v. State, 731 N.W.2d 499, 501 (Minn. 2007).  Claims that are "known" include those available after trial and that could have been raised on direct appeal.  See Townsend v. State, 723 N.W.2d 14, 18 (Minn. 2006) (citation omitted).

Here, since Petitioner could have raised the Sixth Amendment basis for his plea-withdrawal claim on direct appeal, post-conviction review of that claim is barred. Where, as here, state procedural rules preclude both direct and collateral review of Petitioner's Sixth Amendment claim, the claim has been procedurally defaulted.

The only remaining issue to consider is whether Petitioner has shown cause and prejudice, or actual innocence, to excuse his procedural default.  No such showing has been made.  Rather, Petitioner's sole response to his failure to present his Sixth

Amendment claim on direct appeal is that the exhaustion requirement is a matter of comity and not jurisdiction.  Pet.'s Reply, p. 4.  It is true that exhaustion "reflects a policy of federal-state comity . . . ."  Picard v. Connor, 404 U.S. 270, 275 (1971).  Indeed, "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation."  Id. (quoting Darr v. Burford, 339 U.S. 200, 204 (1950)). However, exhaustion is also a matter of jurisdiction.  See 28 U.S.C. § 2254(b)(1)(A).  A federal court has no power to grant habeas relief if the exhaustion requirement is not met.  This is not a matter of discretion.  Therefore, because Petitioner has failed to exhaust his state remedies, § 2254(b)(1)(A) dictates that Petitioner's Sixth Amendment plea-withdrawal claim must be dismissed.

### B.    Petitioner's Excessive-Bail Claim

Respondent contends that Petitioner's excessive-bail claim should be dismissed as moot because Petitioner is no longer entitled to pretrial bail, and thus there is no live controversy.  Resp. Mem., p. 8.  Respondent is correct.  "Because a moot case is not a case or controversy within the meaning of Article III of the United States Constitution, North Carolina v. Rice, 404 U.S. 244, 246 (1971), the mootness question is jurisdictional."  South Dakota v. Hazen, 914 F.2d 147, 149 (8th Cir. 1990).  Therefore, the Court must address the mootness issue before considering the merits of Petitioner's claim.

"[F]ederal courts may not 'give opinions upon moot questions or abstract propositions . . . .'"  Calderon v. Moore, 518 U.S. 149, 150 (1996) (quoting Mills v. Green, 159 U.S. 651, 653 (1895)).  A case "should therefore be dismissed as

13

moot when, by virtue of an intervening event, a court . . . cannot grant 'any effectual relief whatever' in favor of the [petitioner]."  Id. (quoting Church of Scientology of Cal. v. United States, 506 U.S. 9, 13 (1992)).

With respect to a claim of excessive pretrial bail, the issue generally becomes moot upon conviction of the defendant.  Murphy v. Hunt, 455 U.S. 478, 481 (1982); see also United States v. Hollister, 746 F.2d 420, 426 n. 18 (8th Cir. 1984).  After conviction, "[t]he question [is] no longer live because even a favorable decision on it would not . . . entitle[] [the defendant] to bail."  Murphy, 455 U.S. at 481-82.  Instead, "the proper procedure for challenging the legality of excessive bail is by motion for reduction of the amount and timely appeal from the order denying such a motion." Hemphill v. United States, 392 F.2d 45, 47 (8th Cir. 1968) (citing Stack v. Boyle, 342 U.S. 1 (1951)); see also Atkins v. Michigan, 644 F.2d 543, 549 (6th Cir. 1981) ("The protection against unreasonable bail pending trial has been found by the federal courts to be one of the few rights, along with the right to be free of double jeopardy, whose vindication may be asserted prior to trial, either by direct appeal of an adverse interlocutory order or by a petition for habeas corpus.") (internal citations omitted).  If appeal is denied, a prisoner may, before commencement of trial, petition the federal courts for a writ of habeas corpus.  Sheldon v. Nebraska, 401 F.2d 342, 346 (8th Cir. 1968).  However, "[unless] an order fixing bail can be reviewed . . . before sentence, it never can be reviewed at all."  Stack, 342 U.S. at 12 (Jackson, J., concurring).  Accordingly, a prisoner must file a habeas petition at the earliest opportunity or risk losing the right forever.

In this case, the state trial court initially set Petitioner's bail at $200,000 without conditions, or $100,000 with conditions.  Resp. Ex. 5, p. 1.  Petitioner moved the trial court to reduce the amount of his bail, and when the trial court denied the motion, Petitioner immediately appealed the decision to the Minnesota Court of Appeals.  While the appeal was pending, the trial court reduced Petitioner's bail to $70,000.  Id., p. 2.  Thus, the appeal was dismissed as moot on October 25, 2011.  Id.  On January 12, 2012, Petitioner was sentenced for his escape-from-custody conviction.  However, he did not file the present habeas Petition until June 19, 2013, when he was no longer in custody pending trial.  Therefore, this Court can neither reduce the amount of his bail nor grant him release from pretrial detention.  Accordingly, this Court finds that Petitioner's excessive-bail claim is moot and must be dismissed.[3]

---

[3]     In his prayer for relief, Petitioner asks this Court to vacate his conviction. Petition, p. 15.  "[G]enerally, denial of bail is not an available basis for seeking post-conviction relief."  Hamilton v. New Mexico, 479 F.2d 343, 344 (10th Cir. 1973) (citing Sheldon, 401 F.2d at 342).  "[H]abeas relief . . . is sometimes incomplete relief in that its function is to obtain release from the duration or fact of present custody; the statute does not provide for compensation for previous time erroneously served." Wajda v. United States, 64 F.3d 385, 389 (8th Cir. 1995) (citing Waletzki v. Keohane, 13 F.3d 1079, 1080 (7th Cir. 1994) (Posner, J.)).  Thus, to the extent Petitioner is seeking to remedy a past violation of his Eighth Amendment rights, habeas corpus is not an appropriate vehicle.  See Sheldon, 401 F.2d at 346 (Amount of bond pending appeal "raised no issue upon which [petitioner] could be entitled to relief. . . .  [It] could not have affected [petitioner's] rights at trial, and even if excessive would not entitle him to a habeas writ.");  see also Parker v. Estelle, 498 F.2d 625 (5th Cir. 1974) ("[An excessive-bail claim] might raise constitutional questions if presented to us in the proper context.  However, in the absence of any allegation of prejudice other than increased pretrial custody, we hold that [the] issue[] is now moot.").  In summary, even if Petitioner had clearly shown that he was held unconstitutionally before trial, it would not warrant overturning his conviction.

**III.    RECOMMENDATION**

Based on the foregoing, and all the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that Petitioner Michael P. Henderson's

Petitioner Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State

Custody [Docket No. 1], be **DENIED** and this matter be DISMISSED WITH

PREJUDICE.


Dated:        September 29, 2014

*/s Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

**<u>NOTICE</u>**

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation
by filing with the Clerk of Court, and serving all parties by **October 14, 2014**, a writing
which specifically identifies those portions of this Report to which objections are made
and the basis of those objections.  Failure to comply with this procedure may operate as
a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party
may respond to the objecting party's brief within fourteen days after service thereof.  All
briefs filed under this Rule shall be limited to 3500 words.  A judge shall make a de novo
determination of those portions to which objection is made.   This Report and
Recommendation does not constitute an order or judgment of the District Court, and it is
therefore not appealable to the Court of Appeals.